UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN HERNANDEZ-FUENTES,<br><br>    Defendant. | NO. 1:18-cr-2074-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS** |

    Before the Court are Defendant's Motions to Dismiss, ECF Nos. 21 and 28. A hearing on the motions was held on March 4, 2019. The Court heard oral argument on the motions and took them under advisement.

    The first motion was brought under *Pereira v. Sessions*, __U.S. __, 138 S.Ct. 2105 (2018) and this Court's recent rulings in *U.S. v. Bastide-Hernandez*, No. 1:18-cr-2050-SAB, and *U.S. v. Quijada-Gomez*, No. 2:18-cr-0110-SAB. Defendant was charged with illegal reentry, under 8 U.S.C. 21 § 1326. ECF No. 1. An essential element of that crime is a valid order of deportation or removal. In his motions, Defendant challenges the jurisdiction of the immigration court, and thus the validity of the removal order. The second motion challenges the removal order for alleged due-process violations. For the reasons explained herein the Court grants both motions and dismisses the indictment.

//

//

**ORDER RE: DISMISSAL OF INDICTMENT ~ 1**

## FACTUAL BACKGROUND

Defendant is a 33-year-old father of three children. He was first brought to the United States by his parents when he was 15 years old. He remained present in the United States for 6 years, until he encountered immigration officials in 2006. On March 7, 2009, he was served with a Notice to Appear in an immigration hearing, which did not provide date and time information, and was detained by the Department of Homeland Security pending that hearing. The Notice to Appear included a signed waiver of the right to at least a 10-day waiting period before appearing before an IJ, although Defendant contends that this waiver is unenforceable.

On April 28, 2009, the Immigration Court issued a Notice of Hearing providing Defendant with the date and time of his removal hearing. That hearing was scheduled for April 30, 2009, at 8:30 A.M. The Notice of Hearing was served, by mail, courtesy of Mr. Hernandez-Fuentes' custodial officer. Given the very short time between when the Notice of Hearing was mailed and the hearing, Defendant alleges that he did not receive it before the removal hearing.

At that hearing, Defendant was present along with 11 other individuals who were subject to removal proceedings. None of those individuals had counsel, and the IJ proceeded to use a group colloquy to explain their rights, followed by an individual discussion of the facts of each non-citizen's case.

The IJ did not inform the non-citizens about different types of relief, including voluntary departure. During the IJ's individual discussion with Defendant, the IJ engaged in a brief question-and-answer series that appears to have been an attempt to discern whether Defendant was eligible for voluntary departure. However, the IJ did not tell Defendant what voluntary departure was, what the criteria for eligibility are, or what equities would be considered in deciding whether or not to grant it. The IJ found Defendant removable, denied

//

voluntary departure, and ordered him removed. Defendant was removed again in 2011 and 2013, through reinstatement of the 2009 removal order.

Defendant's first Motion to Dismiss argues that because the Notice to Appear lacked date-and-time information, and because the Notice of Hearing failed to perfect this omission through the two-step process approved by the Ninth Circuit in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), the Immigration Court was never vested with jurisdiction, and the removal order is void ab initio. ECF No. 21.

Defendant's second Motion to Dismiss argues that Defendant was not provided with a meaningful opportunity to provide positive equities to inform the IJ's decision of whether or not to grant voluntary departure, and that Defendant was prejudiced because it was plausible that had he been granted a meaningful opportunity to present those equities the IJ would have granted him voluntary departure.

**(I) The First Motion to Dismiss Is Granted**

A recent Supreme Court case, *Pereira v. Sessions*, recently addressed the question of whether the time, date, and location of a removal hearing is a necessary component of Notice to Appear. __ U.S. __, 138 S.Ct. 2105, * (2018), such that service of the Notice to Appear triggered the stop-time rule. The Supreme Court held that under 8 U.S.C. § 1229, time, date, and location information was an essential component of a Notice to Appear, and any document that lacks that information is definitionally not a Notice to Appear. *Id.* Relying on this precedent, this Court recently held that a document that purports to be a Notice to Appear, but which lacks that information, cannot vest jurisdiction with an immigration court, based upon the regulations governing immigration court's jurisdiction. *See Bastide-Hernandez*, No. 1:18-cr-2050-SAB; *United States v. Quijada-Gomez*, No. 2:18-cr-0110-SAB.

//

**ORDER RE: DISMISSAL OF INDICTMENT ~ 3**

Defendant filed his first Motion to Dismiss based upon this Court's prior rulings. However, shortly after he filed his motion, a panel decision from the Ninth Circuit was published, which held that a defective Notice to Appear can nonetheless vest jurisdiction with an immigration court, provided that date and time information is timely provided to the non-citizen through a Notice of Hearing. *See Karingithi*, 913 F.3d 1158, 1162 (9th Cir. 2019). This two-step notice process was approved in a recent Board of Immigration Appeals case, *Matter of Bermudez-Cota*, 27 I. & N. Dec. 441 (BIA 2018), and was first approved by the Ninth Circuit in the 2009 case of *Popa v. Holder*, 571 F.3d 890, 896 (9th Cir. 2009).

Defendant's first Motion to Dismiss now turns on whether the two-step process approved of in *Karingithi* was properly followed. Defendant argues that the Notice of Hearing in this case could not cure the Notice to Appear for three reasons. First, he argues that he did not receive the Notice of Hearing. Second, he argues that the method of service for the Notice of Hearing was improper, and thus the Immigration Court should have disregarded it. Third, he argues that it was untimely, because it did not provide him at least ten days to procure counsel.

Regarding his first argument, Defendant has failed to submit a sworn affidavit averring non-receipt, thereby rebutting the weaker presumption of service through standard mail. *See Salta v. I.N.S.*, 314 F.3d 1076, 1079 (9th Cir. 2002). Regarding the second argument, Defendant cites to the general service regulation for Immigration Court proceedings, 8 C.F.R. § 1003.32. However, that provision only governs documents "filed with or presented to the immigration judge." The Notice of Hearing was not filed with or presented to the IJ, and instead, the regulations provide a specific method of service for notices of hearing found in 8 C.F.R. § 1003.13. That regulation provides that "Service" means "physically presenting or mailing a document to the appropriate party or parties, except that . . . a Notice of Removal Hearing shall be served to the alien in person, or if

**ORDER RE: DISMISSAL OF INDICTMENT** - 4

personal service is not practicable, shall be served by regular mail to the alien or the alien's attorney of record." 8 C.F.R. § 1003.13. The Notice of Hearing was served by regular mail to the alien, albeit courtesy of the custodial officer.

However, the Court agrees that this Notice of Hearing was untimely, and thus the two-step notice process was not followed.

*(a) Timely Notice of Hearing*

The Government argues that any issue regarding the timeliness of the Notice of Hearing implicates constitutional due-process concerns, and not the jurisdiction of the immigration court. *Karingithi* expressly holds otherwise. 913 F.3d at 1162. The *Karingithi* Court expressly limited its holding, with the caveat that "[w]e do not decide whether jurisdiction would have vested if she had not received this information in a timely fashion." *Id.* The caveat explicitly speaks to the vesting of jurisdiction, not potential due process claims, and the *Karingithi* Court expressly left open the precise question this Court is presented with: what constitutes "timely" notification of date and time information, and whether the absence of that notification deprives the immigration court of jurisdiction.

The *Karingithi* Court provided no indication of what "timely" means in this context, and this Court looks to a related statute, 8 U.S.C. § 1229(b)(1), for an answer. That provision, which governs the contents of a Notice to Appear, provides that "[i]n order that an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings under section 1229a of this title, the hearing date shall not be scheduled earlier than 10 days after the service of the notice to appear, unless the alien requests in writing an earlier hearing date." 8 U.S.C. § 1229(b)(1). Based upon this statute, the Court holds that in order for the two-step notice process approved of in *Karingithi* to be validly performed, the non-citizen must be served with a Notice of Hearing providing date and time information not less than ten days before the date of the removal hearing.

//

**ORDER RE: DISMISSAL OF INDICTMENT ꝫ 5**

The Notice of Hearing was sent two days before the removal hearing, apparently via standard mail. ECF No. 21-2. It was sent to Defendant, "c/o custodial officer." Further, Defendant disputes that he ever received the Notice of Hearing.

The Government argues that *Salta* holds that receipt of a Notice of Hearing is presumed upon mailing, and is effective based upon the day of mailing. Where a Notice of Hearing is sent by certified mail, there is a strong presumption of receipt, and the non-citizen has the burden of proving ineffective service through specific evidence detailed in *Arrieta v. I.N.S.*, 117 F.3d 429, 432 (9th Cir. 1997). *Salta* distinguished between certified and non-certified mail, and held that when a Notice of Hearing is sent via standard mail, the presumption of service is significantly lower, and the non-citizen's sworn affidavit of non-receipt is sufficient to rebut it. *Salta*, 314 F.3d at 1079.

Regardless of whether the Court considers service effective on the day of mailing, or on the day of receipt (which in this case was likely the morning of the hearing), whatever the *Karingithi* Court meant by "timely," the Notice of Hearing in this case certainly was not.

The Government's second argument regarding timeliness relates to a waiver of the statutory 10-day notice period found on the Notice to Appear. However, such an argument depends upon the validity of that waiver, and the Notice to Appear contains facial flaws as to the validity of its various representations.

### *(b) Waiver of timely notice*

The Notice to Appear included two places for Defendant to sign, along with the signature of the immigration officer who served the NTA. The first is a "Request for Prompt Hearing," which states "To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge." There is an "x" preceding Defendant's signature, and that waiver is also signed by the Immigration Office, Jaimie Waite.

**ORDER RE: DISMISSAL OF INDICTMENT ↻ 6**

Defendant argues that the waiver should be unenforceable because there is no proof that it was translated, citing a series of cases finding a collateral challenge to a § 1326 charge appropriate when the removal proceedings included waivers of rights that were not made intelligently or knowingly. *United States v. Raya-Vaca*, 771 F.3d 1195, 1198 (9th Cir. 2014); *United States v. Ramos*, 623 F.3d 672, 676 (9th Cir. 2010). The Court finds that the waiver, if not translated, is unenforceable. And while a separate provision of the Notice to Appear purports to have been translated, the Court does not infer that the timely notice waiver was, in particular due to the facial challenge to the credibility of the signing officer.

On the same page as the waiver, Defendant signed a certificate of service. That certificate states that service was made in person, and that "The alien was provided oral notice in the SPANISH/ENGLISH language of the time and date of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act." That certificate was signed by Jaimie Waite and Defendant, whose signature was preceded by an "x".

Defendant was not provided oral notice of the time and date of his hearing. He could not have been, as the Government acknowledges that the date and time of the hearing had not been set. The Court lacks any explanation or testimony from Officer Waite, and based on the facial defects, does not find the waiver valid or enforceable.

*Karingithi* expressly left open the issue of whether a Notice to Appear that is not cured through the timely service of a Notice of Hearing vests the Immigration Court with jurisdiction post-*Pereira*. 913 F.3d at 1162 ("We do not decide whether jurisdiction would have vested if she had not received [date and time] information in a timely fashion.") For the reasons stated in *Quijada-Gomez* and *Bastide-Hernandez*, the Court finds that jurisdiction did not vest. That said, the Court does not disputes that *Karingithi* is controlling when a Notice of Hearing is timely served.

**ORDER RE: DISMISSAL OF INDICTMENT** ɜ 7

## (II) The Second Motion to Dismiss Is Granted

Defendant's second Motion to Dismiss centers around the IJ's failure to notify him of his right to request voluntary departure. An IJ is required to inform a non-citizen in a removal proceeding about relief for which they are apparently eligible, and provide the non-citizen with an opportunity to provide evidence of factors weighing in favor of granting that relief. *See e.g. United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012); *Campos-Granillo v. I.N.S.*, 12 F.3d 849, 852 (9th Cir. 1993), as amended (Feb. 16, 1994) (both upholding a collateral challenge in unlawful reentry cases because the immigration judge failed to adequately provide the non-citizen with an opportunity to provide information regarding voluntary departure.)

Here, the IJ did not inform Defendant that voluntary departure was an option, and while the IJ did perform a cursory question-and-answer series regarding some of the factors to be considered when determining whether voluntary departure is appropriate, many factors were not considered. Further, Defendant did not know why he was being asked those questions, and thus was not afforded the opportunity to provide other examples of the family ties, duration of his residence in the United States, family hardship if relief is not granted, history of employment, or "other evidence attesting to good character" that would militate in favor of that relief. *In re Edwards*, Interim Decision No. 3134, 20 I. & N. Dec. 191 (BIA) (1990).

The Government primarily argues that Defendant has failed to establish prejudice, as required by 18 USC § 1326(d). To show prejudice, Defendant must show that relief was "plausible." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013). Determining "plausibility" is a two-step process. *Id.* First, this Court must identify the equities in this case that would have been considered by the IJ absent the IJ's failure to advise the Defendant. *Id*. Second, the Court must determine whether relief based upon those equities is plausible. *Id*.

**ORDER RE: DISMISSAL OF INDICTMENT ろ 8**

*(a) Relevant Factors*

Defendant argues that negative factors not before the Immigration Court at the time of the hearing should not be included in the counter-factual plausibility analysis. ECF No. 35, *4. The Government argues that all information regarding relevant factors, positive and negative, should be considered. Defendant cites to no law for the proposition that this Court's consideration should be limited to the negative factors actually before the IJ, and all positive factors, whether before the IJ or not. Because the nature of this counter-factual review is based upon what could have plausibly occurred at the hearing, had Defendant been afforded the process he was due, the Court is inclined to find that negative equities not before the IJ should not be considered. However, in this case, it is plausible that Defendant would have been granted relief regardless.

Positive equities, weighing in favor of granting voluntary departure, include "long residence, close family ties to the United States, and humanitarian needs." *Rojas-Pedroza*, 716 F.3d at 1265. Negative equities, weighing in favor of denying voluntary departure, include "'the nature and underlying circumstances of the deportation ground at issue; additional violations of the immigration laws; the existence, seriousness, and recency of any criminal record; and any other evidence of bad character or the undesirability of the applicant as a permanent resident.'" *Id.* (quoting *Matter of Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (BIA 1999)).

The following is a brief summary of the positive equities. Defendant had a enjoyed an extended residence in the United States, having first arrived in 2000 as a minor, and enjoying continuous presence until the hearing in 2009 save for brief absences due to removals in 2006 and 2007. He had close family ties to the United States, most notably his to children, who are United States citizens. And, his removal presented a significant hardship, as he was the sole provider for those children and their mother.

//

**ORDER RE: DISMISSAL OF INDICTMENT ̴ 9**

The negative equities mostly related to his criminal history, which include driving without a license, failure to appear, second degree theft, second degree vehicle prowling, third degree malicious mischief, obstruction, possession of burglary tools, second degree taking a vehicle without permission, refusing to comply, and three arrests for driving under the influence, including one in which the Defendant apparently struck a five-year-old child and provided a false name to the investigating officer.

*(b) The Equities Plausibly Support Voluntary Departure*

This Court's job is not to determine whether it would have granted voluntary departure given these equities. It cannot, in part because of the procedural violations which form the basis for the first motion to dismiss. At oral argument, the Government listed examples of properly submitted positive equities, including letters from family members, employers and employees, and community members. Had Defendant had adequate notice of the hearing, and been notified of voluntary departure, he might have submitted such evidence. But the combination of untimely notice of the hearing and a lack of informed knowledge of voluntary departure and the equities involved combine to ensure that the record is empty of such documentary evidence,

Instead, the inquiry is whether it is plausible that Defendant would have received voluntary departure in a hypothetical hearing in which these factors were considered. Plausibility is not probabilistic in nature, but evaluative, and turns not on the likelihood that a particular outcome would have occurred, but on the sufficiency and adequacy of evidence supporting that outcome. *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1049-50 (9th Cir. 2012).

Thus, the question is whether it is plausible that an immigration court could have granted voluntary departure had there been evidence of positive equities of being brought to the United States as a child, a substantial history of presence in the United States, and serving as the primary provider for family members

**ORDER RE: DISMISSAL OF INDICTMENT ‒ 10**

including multiple children who are United States citizens, but negative equities involving multiple criminal and immigration offenses, including one which resulted in physical injury to another person.

In *In re Pineda-Castellones*, an IJ granted voluntary departure when a non-citizen was married to a U.S. citizen and had three U.S. citizen children, despite "six criminal convictions for illegal entry, battery, drunkenness, threatening, a second battery, and driving under the influence." BIA, 2005 WL 3833024, at *1. The BIA noted that the "bona fides of the marriage" were dubious, and that the IJ's grant of voluntary departure was "more than generous." Accepting that *Pineda-Castellones* represents the outer-bounds of plausibility, on balance, the equites in the case at bar are more positive than the non-citizen's in *Pineda-Castellones's*.

Thus, the Court finds that the positive equities are sufficient to plausibly support a grant of voluntary departure, notwithstanding Defendant's negative equities. *See Matter of Gamboa*, 14 I & N Dec. 244, 248 (BIA 1972) ("Discretion may be favorable exercised in the face of adverse factors where there are compensating elements such as long residence here, close family ties, or humanitarian needs."). The Court therefore grants the second Motion to Dismiss, ECF No. 28.

Because jurisdiction never vested in the immigration court, rendering the removal hearing and subsequent order void, and because of prejudicial due process violations at that hearing, the Court grants both Motions to Dismiss, ECF Nos. 21 and 28.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, ECF No. 21, is **GRANTED**.
2. Defendant's Motion to Dismiss, ECF No. 28, is **GRANTED**.
3. The Indictment in the above-captioned matter is DISMISSED, with prejudice.

4. The U.S. Marshals Service shall release Defendant from federal custody forthwith.

**IT IS SO ORDERED**. The District Court Executive is hereby directed to enter this Order, close the case, and furnish copies to counsel and to the U.S. Marshals Service.

**DATED** this 20th day of March 2019.



_____
Stanley A. Bastian
United States District Judge

**ORDER RE: DISMISSAL OF INDICTMENT** ~ 12